UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BERNARD JOSEPH (#12611)                          CIVIL ACTION

VERSUS

DAVID ANKENBRAND, ET AL.                         NO.: 14-00078-BAJ-SCR

## RULING AND ORDER

Before the Court is a **Motion for Summary Judgment (Doc. 122)** filed by

Defendants David Ankenbrand, Jimmy Smith, Robert Butler, Diane Peabody, and

N. Burl Cain (collectively, "Defendants") seeking an order dismissing all claims of

Plaintiff Bernard Joseph ("Plaintiff") pursuant to Federal Rule of Civil Procedure

("Rule") 56. Plaintiff opposes this motion. (*See* Doc. 123). Jurisdiction is proper

pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. For reasons

explained herein, Defendants' motion is **GRANTED**.

I.    **BACKGROUND**

Plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP") in

Angola, Louisiana filed the instant action *pro se*, pursuant to 42 U.S.C. § 1983 and

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq*. (Doc. 44 at

¶¶ 2—3).

With respect to his § 1983 claim, Plaintiff asserts that LSP Warden N. Burl

Cain, Assistant Warden Robert Butler, Colonel Jimmy Smith, Director of Mental

Health Services Diane Peabody, mental health worker David Ankenbrand, and Dr.

Matthew Gamble[1] subjected him to unconstitutional conditions of confinement and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (*See id.* at ¶¶ 25-33). Specifically, Plaintiff asserts that (1) the tier upon which he was housed was unconstitutionally hot and (2) Defendants' failure to comply with prison procedures intended to address Plaintiff's T-code[2] and heat related duty statuses[3] evinced a deliberate indifference to his serious medical needs. (*Id.*).

With respect to his ADA claim, Plaintiff asserts that LSP's current practice of "distributing T-code printout lists to lockdown areas" renders Diane Peabody, by virtue of her position as Director of Mental Health Services, in violation of the ADA. (*See id.* at ¶ 31).

All Defendants are sued in their individual and official capacities, with Plaintiff seeking compensatory, punitive, and emotional damages. (*Id.* at ¶¶ 3—8, 34—36). Plaintiff has not sought any type of injunctive relief.

## II.   LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any

---

[1] Defendant Gamble did not join the instant Motion for Summary Judgment. In fact, since being served on August 19, 2014, Gamble has yet to answer Plaintiff's Complaint. (*See* Doc. 100). Therefore, although the allegations asserted against Gamble seem to suffer from many of the deficiencies outlined in this Ruling and Order, Plaintiff's § 1983 claim as it applies to Gamble remains pending. (*See* Doc. 44 at ¶ 32).

[2] Pursuant to LSP Health Care Directive 13.019, inmates who "display, verbalize ideations or make threats of self-harm and/or suicidal behavior" are assigned T-code status. (*See* Doc. 122-10 at p. 2, 7).

[3] Pursuant to LSP Health Care Policy No. HC-45, inmates who have been prescribed psychotropic medication are, absent exceptional circumstances, assigned heat related duty status. (Doc. 122-8 at p. 2).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the motion for summary judgment must be denied. *Int'l Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

3

affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

### III.   DISCUSSION

#### A. Sovereign Immunity

Defendants contend that the monetary damage claims asserted against them in their official capacities are barred by the Eleventh Amendment and should be dismissed. (Doc. 122-1 at p. 3).  The Court agrees.

The Eleventh Amendment to the United States Constitution bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity. *Cozzo v. Tangipahoa Parish Council—President Gov't,* 279 F.3d 273, 280 (5th Cir. 2002). "By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts." *Cozzo,* 279 F.3d at 281 (citing La. Rev. Stat. § 13:5106(A)).  And because a suit for retrospective relief against a state official in his official capacity is treated as a suit against the state itself, any such suit brought against a Louisiana official is barred by the Eleventh Amendment. *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (suits brought against a state official in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotations omitted) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).

Accordingly, Plaintiff's official capacity claims are barred by the Eleventh Amendment. All claims brought against Defendants in their official capacities shall be dismissed.[4]

## B. Qualified Immunity

The doctrine of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When pleaded in a motion for summary judgment, qualified immunity shifts the burden from the defendant to the plaintiff to establish, by competent evidence, that there is a genuine dispute of material fact with respect to whether (1) the official violated an actual statutory or constitutional right and (2) the official's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Pearson*, 555 U.S. at 232; *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). The United States Court of Appeals for the Fifth Circuit has held that even when construing all facts and drawing all reasonable inferences in a light most favorable to the non-moving party, qualified immunity immunizes "all but the plainly incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

---

[4] It should also be noted that Plaintiff filed the instant action in federal court. Defendants did not remove. *See, e.g., Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 256 (5th Cir. 2005) (holding, *inter alia*, that a state waives its Eleventh Amendment sovereign immunity by removing a case to federal court).

## 1. Section 1983 Deliberate Indifference

Plaintiff alleges that Assistant Warden Robert Butler, Colonel Jimmy Smith, and mental health worker David Ankenbrand subjected him to unconstitutional conditions of confinement and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. (*See* Doc 44 at ¶¶ 28—30, 32). Put another way, Plaintiff alleges that (1) his conditions of confinement were so serious as to deprive him of "the minimal civilized measure of life's necessities" and (2) Defendants acted with deliberate indifference to Plaintiff's "health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (internal quotations and citations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that the deliberate indifference standard applies to Eighth Amendment challenges in which a prisoner alleges "inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both").

Assuming *arguendo* that Plaintiff's prison conditions were sufficiently serious, Plaintiff must still raise a genuine dispute of material fact with respect to whether Ankenbrand, Smith, and Butler acted with deliberate indifference to his medical needs. *See Pearson*, 555 U.S. at 236 (noting that although it is "often appropriate" for a court examining a qualified immunity defense to first determine whether the official violated an actual statutory or constitutional right, the sequence is no longer "regarded as mandatory"). An official acts with deliberate indifference when he "consciously disregard[s] a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994) (internal quotations and citations

omitted). Deliberate indifference therefore requires Plaintiff to establish (1) that the officer was aware of facts from which a substantial risk of serious harm could have been inferred and (2) that the officer actually drew the inference. *Ball v. LeBlanc*, 792 F.3d 584, 594 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837).

It is true that "[u]nder exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (internal quotations and citations omitted). However, by requiring "the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs," deliberate indifference presents, for the plaintiff, "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotations and citations omitted).

### a. Ankenbrand

Plaintiff asserts that when he told Defendant Ankenbrand about his T-code status, Ankenbrand should have "immediately sumoned [sic] a tier walker[5] or else

---

[5] According to Plaintiff, "[i]nmate tier walkers are required to watch T-code status inmates who have been assigned to a designated T-code tier." (Doc. 44 at ¶ 31). Although Plaintiff's assertion is irrelevant insofar as a violation of prison policy does not constitute a statutory or constitutional violation, it is worth noting that Health Care Directive 13.019, which is the policy to which Plaintiff presumably refers, "does not state [that] offenders with a T-code status must be housed in a specific location." (*See* Doc. 122-6 at p. 1). Rather, T-code status offenders are typically housed on the same tier not as a matter of policy, but as a matter of convenience in order to help the tier walkers maintain constant surveillance over those who "display, verbalize ideations or make threats of self-harm and/or suicidal behavior." (*Id.*). These walkers, in essence, serve as a second set of eyes to the "security officers [who] make their rounds . . . every thirty minutes." (*See* Doc. 122-4 at p. 2).

sought the Plaintiff's immediate removal" from the level-2 booth tier.[6] (Doc. 44 at ¶ 28). Because Ankenbrand failed to do either, Plaintiff asserts that he acted with deliberate indifference to Plaintiff's safety. (*Id.*).

Plaintiff's argument is both factually and legally flawed. Factually, Ankenbrand lacked the authority to request that "an offender be transferred to another cell or tier." (Doc. 122-7 at p. 1). And legally, Plaintiff's suggestion that prison officials with such authority must choose between (a) rewriting LSP's T-code policy, (b) transferring Plaintiff to another cell, and (c) violating the Eighth Amendment has already been rejected by the Fifth Circuit.[7] *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (noting that "an inmate's disagreement with a [custodial] classification is insufficient to establish a constitutional violation"); *Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (acknowledging that "a prisoner's disagreement with his medical treatment" does not constitute deliberate indifference, absent exceptional circumstances).

Ankenbrand is therefore entitled to qualified immunity, and the Court shall dismiss the § 1983 claim brought against him in his individual capacity.

---

[6] Plaintiff was housed in cell #12 on Camp J's level-2 booth tier. (*See* Doc 121-2 at p. 20). Camp J was "a maximum security . . . disciplinary camp when the events giving rise to this suit took place." (*Id.* at p. 18).

[7] It appears that even Plaintiff acknowledges that Defendant Ankenbrand did not act with deliberate indifference, as his Complaint asserts that Ankenbrand merely "knew or should have known" of the threat that his conduct posed to Plaintiff's health. (Doc. 44 at ¶ 28); *see also O'Neil v. Texas Dep't of Criminal Justice*, 804 F. Supp. 2d 532, 536 (N.D. Tex. 2011) (acknowledging that a Defendant's negligence, without more, does not constitute an Eighth Amendment violation). However, because a "handwritten pro se document is to be liberally construed," the Court has not held Plaintiff's understandable confusion against him. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### b. Smith and Butler

Plaintiff's claims against Defendants Smith and Butler are remarkably similar. In essence, Plaintiff asserts that "common sense" should have caused Smith and Butler to realize that equipping Camp J's level-2 tier with only "two hallway wall fans" and providing Camp J's level-2 inmates with only two servings of ice per day was inadequate and constituted deliberate indifference in violation of the Eighth Amendment.[8] (*See* Doc. 44 at ¶¶ 29—30).

Plaintiff's assertion that Smith and Butler acted with deliberate indifference because their actions failed to comport with his notion of "common sense" has already been rejected by the Supreme Court. *Farmer*, 511 U.S. at 843 n.8 (noting that a plaintiff asserting a claim of deliberate indifference must do more than allege that "a reasonable person would have known, or that the defendant should have known" better). Furthermore, Plaintiff's reliance on *Ball v. Leblanc* is woefully misguided.

In *Ball*, Defendant Norwood admitted that LSP "maintains a list of, and monitors more closely, inmates particularly susceptible to heat-related illness." *Ball*, 792 F.3d at 594. Defendant Norwood further admitted that despite the fact that she "personally reviewed the ARPs for each prisoner, inspected each prisoner's medical records, [and] interviewed" two of the three plaintiffs, none of them were on

---

[8] Defendants Smith and Butler dispute both of Plaintiff's assertions. (*See* Doc. 122-4 at p.1—2) (wherein Smith asserts that "[d]uring the time period at issue in this lawsuit, there were anywhere between two (2) to five (5) hallway fans located on each Camp J tier" and Camp J inmates "had access to ice twenty-four (24) hours per day"); (*See* Doc. 122-5) (wherein Butler asserts the same). However, because the Court must, on a motion for summary judgment, construe all facts and draw all reasonable inferences in a light most favorable to the non-moving party, the Court accepts as true Plaintiff's aforementioned factual assertions. *See Poole*, 691 F.3d at 627.

the list. *Id.* Because the plaintiffs, who had diseases ranging from hypertension to high cholesterol, were not on the list, and because of the highly inappropriate actions undertaken by Defendant Cain during the court-ordered monitoring period, "the district court reasonably inferred that the [Ball] Defendants" acted with deliberate indifference to the plaintiffs' medical needs in violation of the Eighth Amendment. *Id.* at 590, 594.

However, none of the Defendants in this case were deliberately indifferent to Plaintiff's medical needs. In fact, with respect to Plaintiff's medical needs, none of the Defendants in this case were indifferent at all. When Plaintiff complained of excessive heat and the potential medical consequences therefrom, he was assigned heat related duty status.[9] When Plaintiff complained of severe mental depression, he was assigned T-code status. Plaintiff is, when compared to the plaintiffs in *Ball*, seemingly on every list.

Smith and Butler are therefore entitled to qualified immunity, and the Court shall dismiss the § 1983 claims brought against them in their individual capacities.

### 2. Section 1983 Supervisor Liability

Plaintiff appears to assert claims of supervisor liability against Defendants Peabody and Cain. Although not a model of clarity, the gravamen of Plaintiff's supervisor liability claims is that LSP's policies, standing alone, establish Peabody and Cain's deliberate indifference to Plaintiff's safety in violation of the Eighth

---

[9] Although again irrelevant insofar as a violation of HC-45 does not constitute a statutory or constitutional violation, Plaintiff's assertion that his heat related duty status precludes him from being housed on the booth tier at Camp J is incorrect. (*See* Doc. 122-14 at p. 2) (stating that "HC-45 allows offenders with a heat related duty status to be housed in any location at LSP").

Amendment. (*See* Doc. 44 at ¶¶ 31, 33). While Plaintiff does not identify the allegedly deficient policies by name, he presumably objects to Health Care Directive 13.019 and Health Care Policy HC-45, which address Plaintiff's T-code and heat precaution duty statuses, respectively. (*See* Doc. 122-14).

Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). However, a supervisor may be held liable if (1) he is personally involved in the constitutional deprivation, or (2) there is "a sufficient causal connection between the supervisor's wrongful conduct and the [underlying] constitutional violation." *Id*. at 304. Plaintiff does not allege that Warden Cain or Director of Mental Health Services Peabody was personally involved in any type of constitutional deprivation. Therefore, Plaintiff must produce evidence that Cain and Peabody not only implemented policies that are a "repudiation of constitutional rights," but also that there is a sufficient causal connection between those policies and the alleged Eighth Amendment violation. *See id*.

Plaintiff has once again failed to satisfy his evidentiary burden. In fact, Plaintiff has "adduced no evidence whatever" that either policy "actually failed to deliver necessary and appropriate medical care to any other inmate, or that [Cain or Peabody] was otherwise actually informed or consciously believed that the policy would expose prisoners to [a] substantial risk of" serious harm. *See id*. at 305 (noting that in order to hold a supervisor who was not personally involved in the constitutional deprivation liable under § 1983, a plaintiff must establish (1) that the

11

supervisor failed to correct a policy that he knew was unconstitutional and (2) that the supervisor's action or inaction caused the plaintiff's injuries); (*See* Doc. 122-6 at p. 2) (wherein Defendant Cain asserts that he "has no independent knowledge of excessive heat complaints by offenders housed at Camp J during the summer of 2013"); (*See* Doc. 122-14 at p. 2) (wherein Defendant Peabody asserts that she is "not aware of any deficiencies with Directive 13.019 and/or complaints that the Directive is somehow inadequate"). Cain and Peabody simply "cannot be held liable on the theory that [they] implemented an unconstitutional policy when the record below indicates no more than that the system may have failed in [this] one particular instance. . . ." *Id.*

Cain and Peabody are therefore entitled to qualified immunity, and the Court shall dismiss the § 1983 claims brought against them in their individual capacities.

### 3. ADA claim

Plaintiff alleges that Defendant Peabody oversees a Mental Health Department that is in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 *et. seq.* (Doc. 44 at ¶ 31). Specifically, Plaintiff asserts that the Department's "current practice of distributing T-code printout lists to lockdown areas is inadequate" and seeks to hold Peabody individually liable by virtue of her role as Director of Mental Health Services at LSP (*Id.*)

Title II of the ADA, 42 U.S.C. § 12132, "unmistakably includes State prisons and prisoners within its coverage." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998). However, in order for Plaintiff's ADA claim to withstand Peabody's assertion

of qualified immunity, Plaintiff must establish (1) Peabody violated the ADA and (2) Peabody's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Hall v. Thomas*, 190 F.3d 693, 696—97 (5th Cir. 1999).

Plaintiff's Complaint does not at any point allege that Peabody "discriminated against him because of his disability."[10] *Id.* at 696. Accordingly, Plaintiff fails to state a claim under, nonetheless prove, a violation of the ADA. *Id.*; *see also O'Quin v. Gautreaux*, No. 14-CV-098, 2015 WL 1478194, at *10 (M.D. La. Mar. 31, 2015) (holding that where plaintiffs allege that their son was (1) diagnosed with bipolar disorder, schizo-affective disorder, and paranoid schizophrenia prior to his incarceration, (2) denied access to showers, telephone privileges, and medical care during his incarceration, and (3) discriminated against by reason of his aforementioned disabilities, plaintiffs have established a prima facie case of disability discrimination under Title II of the ADA); *Fregia v. Swift*, No. 11-CV-00060, 2011 WL 7461669, at *5-6 (N.D. Tex. Dec. 30, 2011) (holding that where plaintiff alleges (1) he was precluded from carrying more than ten pounds due to back surgery, (2) prison policy requires all offenders, regardless of restrictions, to carry their own property without assistance or use of a cart, and (3) by virtue of this policy, he was denied the full and equal enjoyment of possessing personal property in prison, plaintiff has established a prima facie case of disability discrimination

---

[10] In order to avoid an unnecessary academic analysis, the Court assumes *arguendo* that Plaintiff's T-code status renders him disabled under the ADA. *See* 42 U.S.C. § 12102(1)(A)-(C) (defining the term "disability" for purposes of the ADA); *Ball*, 792 F.3d at 596 (explaining 42 U.S.C. § 12102(1)(A)). The Court further assumes that Plaintiff is "qualified" to bring suit under Title II. *See* 42 U.S.C. § 12131(2) (defining the term "qualified individual" for purposes of Title II).

under Title II of the ADA), *report and recommendation adopted*, No. 11-CV-00060, 2012 WL 697136 (N.D. Tex. Mar. 5, 2012).

Peabody is therefore entitled to qualified immunity, and the Court shall dismiss the ADA claim brought against her in her individual capacity.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion for Summary Judgment (Doc. 122)** is **GRANTED**.[11]

Baton Rouge, Louisiana, this __16th__ day of September, 2015.

**BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[11] As stated *supra*, Plaintiff's Complaint (Doc. 44) is not dismissed due to Plaintiff's outstanding § 1983 claim against Defendant Gamble.

14